UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHERYL ANATOLE HOLMES, | ) Case No.: 12-CV-06193-LHK |
| Plaintiff, | ) |
| v. | ) ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE |
| ELECTRONIC DOCUMENT PROCESSING, INC. and TANAYA V. SULCER, | ) |
| Defendants. | ) |

Plaintiff Cheryl Anatole Holmes ("Holmes" or "Plaintiff") brings this action against Defendants Electronic Document Processing, Inc. ("EDP") and Tanaya V. Sulcer ("Sulcer") (collectively, "Defendants") for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"); the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788 *et seq.* ("RFDCPA" or "Rosenthal Act"); and California Business and Professions Code §§ 17200 *et seq.* ("Unfair Competition Law" or "UCL"). Holmes contends that, in an attempt to collect a debt, Defendants filed a false proof of service in a state court action.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint, ECF No. 13 ("Mot. to Dismiss"), and Defendants' Motion to Strike Portions of Plaintiff's Complaint, ECF No. 14 ("Mot. to Strike"). Pursuant to Civil Local Rule 7-1(b), the Court found this matter appropriate

for determination without oral argument. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby DENIES Defendants' Motion to Dismiss, and DENIES Defendants' Motion to Strike.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Holmes allegedly incurred a consumer credit debt ("the alleged debt") at some unknown time for personal, family, or household purposes. *See* Compl. ¶ 44, ECF No. 1. The debt was consigned and/or otherwise assigned to Lang, Richert & Patch, a debt collection law firm. Compl. ¶ 45.

On June 14, 2012, Lang, Richert & Patch filed a lawsuit against Holmes in the Santa Clara Superior County, *Unifund CCR Partners v. Cheryl Anatole Holmes*, Santa Clara County Case No. 1-12-CV-226523 (the "State Court Action"), in an attempt to collect the debt. *See* Compl. ¶ 46. Thereafter, Lang, Richert & Patch allegedly hired Electronic Document Processing, Inc. ("EDP")—a California corporation engaged in the business of composing and selling forms, documents, and other media to be used for debt collection—to serve Holmes by delivering to her a copy of the State Court Summons and Complaint. *See* Compl. ¶¶ 10, 47. Tanaya V. Sulcer ("Sulcer") is a process server who is or was an employee and/or agent of EDP. *See* Compl. ¶¶ 11, 21(b).

Holmes contends that, on or about July 18, 2012, EDP composed a false Proof of Service of Summons and filed it in the Santa Clara Superior Court in order to obtain a default judgment against her. *See* Compl. ¶¶ 48, 49; *id.* at Ex. 1. This Proof of Service of Summons represents, under penalty of perjury, that Sulcer personally served Holmes with a copy of the Summons and Complaint for the Superior Court lawsuit. *See* Compl. ¶¶ 48-49. However, Holmes disputes that she was served *personally*. Rather, on or about July 10, 2012, "Plaintiff returned home from work and found the Summons and Complaint wedged under her front door." Compl. ¶ 54. In addition, the Proof of Service of Summons describes the person served as a female Caucasian, 50-years-old, with brown hair and brown eyes, 5 feet 8 inches tall, and weighing 165 pounds. *See* Compl. ¶ 54. However, Holmes is 62-years-old, with blond hair and blue eyes, and weighs 125 pounds. *See id*.

Holmes further alleges that EDP authorized Sulcer to use EDP's address and telephone number on process server returns in order to shield Sulcer from service of process if she were sued. *See* Compl. ¶ 27. Holmes contends that EDP also intentionally withheld its own name and process server registration number from the process server returns in order to misrepresent the true nature of EDP's services and EDP's relationship with Sulcer. *See* Compl. ¶ 26.

According to Holmes, EDP and Sulcer are engaged in the "practice of 'sewer service' – i.e., failing to serve a debtor and filing a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment can be entered against her." Compl. ¶ 1.[1] The Proof of Service of Summons in this case indicates that Defendants sold the process server return to Lang, Richert & Patch for $59.00. Compl. ¶ 53. Because EDP will pay Sulcer and other process servers only for service attempts that are reported as completed, and will pay substantially less or nothing for service that is not reported as completed, Holmes alleges that "process servers like Sulcer have a strong financial incentive to falsify process server returns." Compl. ¶ 55. According to Holmes, "EDP knowingly promotes the use of false process server returns through its flat rate or fixed fee compensation." Compl. ¶ 55. Holmes also alleges that "[d]ebt collection law firms and debt buyers plainly benefit from the sewer services provided by unscrupulous process servers like the Defendants in this case" because they are "able to generate hundreds of judgments by default on cases where they could never prevail on the merits." Compl. ¶ 57. "Once default judgments are fraudulently obtained, they are sued to levy consumer's bank accounts, garnish their wages, seize their property, damage their credit reports, and/or pressure them into unaffordable payment plans." *Id*.

### B. Procedural History

Holmes filed her Complaint on December 6, 2012. ECF No. 1. On February 19, 2013, Defendants filed their Motion to Dismiss and Motion to Strike the Complaint. *See* ECF Nos. 6, 7.

---

[1] As explained in *Richardson v. Alliance Tire & Rubber Co.*, 158 F.R.D. 475 (D. Kan. 1994), the term "sewer service" originated in jurisdictions in which process could be served by professional process servers rather than public officials, and derived from those "process servers [who] once followed a practice of disposing of process given to them to serve (e.g., by throwing it down a sewer) and then falsely returning that they had duly served it." *Id*. at 480 n.5 (quoting 1 Robert C. Casad, Jurisdiction in Civil Actions § 3.01[7][d] (2nd ed. 1991)).

3

Case No.: 12-CV-06193-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1  The following day, the case was reassigned to the undersigned judge. ECF No. 12. On February
2  26, 2013, Defendants amended and re-noticed their Motion to Dismiss and Motion to Strike
3  Plaintiff's Complaint. *See* Mot. to Dismiss, ECF No. 13; Mot. to Strike, ECF No. 14. On April 12,
4  2013, Holmes filed her Opposition to the Motion to Dismiss, *see* Opp'n to Mot. to Dismiss, ECF
5  No. 18, and her Opposition to the Motion to Strike, *see* Opp'n to Mot. to Strike, ECF No. 19.[2]  On
6  April 26, 2013, Defendants filed their Reply in support of the Motion to Dismiss, *see* Reply Supp.
7  Mot. to Dismiss, ECF No. 21, and their Reply in support of the Motion to Strike, *see* Reply Supp.
8  Mot. to Strike, ECF No. 20.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is a court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)

---

[2] On February 28, 2013, the parties filed a joint stipulation to amend the briefing schedule, which the Court hereby grants. *See* Stipulation, ECF No. 15.

(quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.  Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (internal citations omitted).  "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id*.  "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### III.  MOTION TO DISMISS

Defendants' Motion to Dismiss argues that: (1) Holmes fails to state a claim under the FDCPA because Defendants are entitled to the "process server exception" pursuant to 15 U.S.C. § 1692a(6)(D); and (2) Plaintiff's claims are barred by California's litigation privilege, pursuant to California Civil Procedure Code § 47(b).  The Court will address each argument in turn.

### A.  Failure to State a Claim under the FDCPA

1   To state a claim alleging violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), a plaintiff must show: "(1) that [s]he is a consumer; (2) that the debt arises out of a transaction entered into for personal purposes; (3) that the defendant is a debt collector; and (4) that the defendant violated one of the provisions of the FDCPA." *Freeman v. ABC Legal Services, Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011). For purposes of this motion, Defendants do not challenge the first two elements. *See* Mot. to Dismiss at 4. Thus, the Court will only address the third and fourth elements of Plaintiff's FDCPA claim.

### 1. Whether Defendants Are "Debt Collectors"

#### a. "Debt Collector" as Defined by 15 U.S.C. § 1692a(6)

Holmes asserts that Sulcer and EDP act indirectly as "debt collectors" because they regularly serve process for debt collection lawsuits. Compl. ¶¶ 10, 11, 21, 22, 25-28, 37. Specifically, Holmes alleges that, by manufacturing false Proofs of Service, EDP and Sulcer assist other debt collectors in obtaining default judgments when debtors fail to appear in court. *Id.* Moreover, EDP's purported advertising and marketing of process service to debt collectors suggest that EDP targets at least some of its service of legal process to assist debt collectors. *See* Compl. ¶ 21. Defendants dispute that they are "debt collectors" under the FDCPA simply because "a portion of [EDP's] [attorney] services relate to collection actions of consumer debt." Mot. to Dismiss at 8.

Pursuant to 15 U.S.C. § 1692a(6), a "debt collector" is defined as any person whose principal purpose of business is to collect debt, or "who regularly collects or attempts to collect, directly or indirectly, debts owed or due." 15 U.S.C. § 1692a(6). Notably, the term "debt collector" is not limited to formal debt collection agencies. *See, e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (including within the definition of a "debt collector" a lawyer who regularly, through litigation, tries to enforce consumer debts). In fact, Congress intended the scope of the Act "to cover all third persons who regularly collect debts for others." S. Rep. No. 95-382, 95th Cong. 1st Sess. 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697-98 (stating that "[t]he requirement that debt collection be done 'regularly' . . . exclude[s] a person who collects debt for another in an isolated instance, but . . . include[s] those who collect [debts] for others in the regular course of

6
Case No.: 12-CV-06193-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1   business."). Therefore, the language and the legislative history of the FDCPA suggest that an
2   entity qualifies as a "debt collector" if it regularly performs debt collection services, regardless of
3   what percentage of its services relate to debt collection. *See* S. Rep. No. 95-382, at 3; *see also*
4   *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1146 (9th Cir. 1998) ("Had Congress
5   intended to limit the Act to licensed or registered collection agencies, it would have confined the
6   statutory language to businesses for which debt collection is the 'principal purpose.'"). As Holmes
7   alleges that Defendants regularly perform debt collection services, the Court finds that Holmes has
8   sufficiently alleged that Defendants' actions are those covered by the term "debt collector," as
9   defined by 15 U.S.C. § 1692a(6).

### b.   Process Server Exemption

11   Nevertheless, the FDCPA does carve out certain exceptions to the term "debt collector,"
12   which Defendants argue renders them exempt from the allegations in this case. *See* 15 U.S.C.
13   § 1692a(6)(A)-(F). Pursuant to 15 U.S.C. § 1692a(6)(D), for instance, the term "debt collector"
14   does not apply to "any person while serving or attempting to serve legal process on any other
15   person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). As
16   Sulcer was attempting to serve legal process on Holmes in connection with the judicial
17   enforcement of a debt, Defendants maintain that they fall squarely within this "process server"
18   exemption. *See* Mot. to Dismiss at 2; Reply Supp. Mot. to Dismiss at 2.
19   Holmes disputes that Defendants are exempt from the purview of the FDCPA and contends
20   that Defendants' alleged filing of a false process server return brings Defendants outside of the role
21   of a process server. As Judge Edward Chen noted in *Freeman v. ABC Legal Services, Inc.*, 827 F.
22   Supp. 2d 1065 (N.D. Cal. 2011) — a similar FDCPA case in which the plaintiff alleged that a legal
23   services corporation filed a false proof of service in superior court in order to obtain a default
24   judgment against plaintiff — "when someone who would otherwise qualify for the exemption
25   'goes beyond being merely a messenger in serving process and engages in prohibited abusive or
26   harassing activities to force an individual to repay a debt,' the exemption no longer applies and the
27   process server is subject to FDCPA liability." *Id*. at 1073 (quoting *Flamm v. Sarner & Assoc. P.C.*,
28   No. 02-4302, 2002 WL 31618443, at *5 (E.D. Pa. Nov. 6, 2002)).

7

Importantly, 15 U.S.C. § 1692d, which is entitled "Harassment or Abuse," proscribes debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. "Without limiting the general application of the foregoing," Section 1692d lists examples of conduct that is considered unlawful. *See* 15 U.S.C. § 1692d(1)-(6). For example, a debt collector may not attempt to collect a debt by threatening or using violence to harm a person, using obscene or profane language as a form of abuse, engaging in public shaming, or harassing people with continuous telephone calls. *Id*.

While Defendants acknowledge that the process server exemption does not apply when someone engages in prohibited abusive or harassing activities as enumerated in 15 U.S.C. § 1692d, Defendants urge this Court to adopt a narrow interpretation of the "abusive and harassing" behavior which forfeits the process server exemption. *See* Mot. to Dismiss at 5. In particular, Defendants claim that alleged sewer service does not forfeit the exemption because sewer service is not specifically listed in 15 U.S.C. § 1692d as one of the proscribed harassing, oppressive, or abusive behaviors.

The Court is not persuaded by Defendants' argument that "the filing of a false proof of service cannot be equated with the type of abusive and oppressive conduct specifically identified by the statute." Mot. at 6. Importantly, the list of proscribed abusive and harassing activities in Section 1692d is non-exhaustive. *See* 15 U.S.C. § 1692d (listing six harassing and abusive behaviors that violate the statute "[w]ithout limiting the general application" of the statute's prohibition on harassing, oppressive, or abusive conduct); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011) ("The Act includes a non-exhaustive list of examples of proscribed conduct."). Moreover, courts have specifically held that engaging in sewer service can forfeit the process server exemption. *See, e.g.*, *Freeman*, 827 F. Supp. 2d at 1074 (holding that plaintiff "sufficiently alleged that Defendants engaged in the practice of 'sewer service' so as to forfeit the process server exemption."). Similarly, in *Spiegel v. Judicial Atty. Servs.*, No. 09-7163, 2011 WL 382809, at *1 (N.D. Ill. Feb. 1, 2011), a plaintiff filed suit against Judicial Attorney Services, Inc. and an individual process server, claiming that defendants violated the FDCPA's

1  prohibition on "unfair, harassing, and deceptive" debt collection practices by falsely claiming that
2  they effected personal service on plaintiff in connection with a debt collection lawsuit.  The
3  Northern District of Illinois denied defendants' motion to dismiss based on defendants' argument
4  that they were exempt from the FDCPA by virtue of the process server exemption because, "if
5  [plaintiff's] allegations were true, the defendants' actions would have taken them beyond their role
6  as process servers and rendered them ineligible for the exception." *Id*.

7  Even if sewer service constitutes the *type* of "abusive and harassing activity" that forfeits
8  the process server exemption, Defendants still dispute that *one instance* of sewer service suffices.
9  *See* Mot. to Dismiss at 6.  However, Defendants provide no legal support for their "suggestion"
10 that "[a] single isolated incident does not equal the 'practice of sewer service' such that it should
11 obliviate [sic] the process server exemption under the FDCPA."  *Id*.  Moreover, courts have
12 indicated that "the execution of one false proof of service" could "be enough to forfeit the process
13 server exemption."  *Freeman*, 827 F. Supp. 2d at 1074; *see also Spiegel*, 2011 WL 382809, at *1
14 (denying defendants' motion to dismiss based on defendants' argument that they were exempt from
15 the FDCPA by virtue of the process server exemption even though plaintiff alleged only one act of
16 "sewer service").  Defendants have not provided any cases suggesting the contrary.

17 In light of *Freeman* and *Spiegel*, the Court finds that Holmes has alleged sufficient facts to
18 state a claim that Defendants are not covered by the process server exemption.  The Complaint
19 alleges that Defendants engaged in at least one act of sewer service because they "failed to serve
20 court process entrusted to them and instead provide[d] a perjured Proof of Service of Summons."
21 Compl. ¶ 4.  Rather than serving Holmes personally—as Defendants claimed in the Proof of
22 Service—Defendants merely wedged the Summons and Complaint under Holmes's front door.
23 Further, Holmes alleges that the Proof of Service of Summons describes the person served as a
24 female Caucasian, 50-years-old, with brown hair and brown eyes, 5 feet 8 inches tall, and weighing
25 165 pounds.  *See* Compl. ¶ 54.  However, Holmes is 62-years-old, with blond hair and blue eyes,
26 and weighs 125 pounds.  *See id*.  Moreover, Holmes asserts that the Defendants included only
27 limited information on the process server return in an effort shield Defendants from liability if
28 sued.  *See* Compl. ¶ 26.  As it may be possible for even one instance of sewer service to forfeit the

process server exemption, the Court finds that Holmes has sufficiently alleged that Defendants are "debt collectors" under the FDCPA who are ineligible for the process server exception because of their engagement in "sewer service." *See Freeman*, 827 F. Supp. 2d at 1074.[3]

Thus, Defendants' Motion to Dismiss Plaintiff's Complaint based on the contention they are not "debt collectors" pursuant to 15 U.S.C. § 1692a(6) of the FDCPA is DENIED.

### 2. Whether Defendants Violated any Provisions of the FDCPA

The second issue for the Court to resolve is whether Holmes has alleged conduct that violates any provisions of the FDCPA. Holmes claims that, by filing a false Proof of Service and withholding EDP's name and process server registration number from the Proof of Service, Defendants violated Sections 1692d, 1692e, 1692e(2), 1692e(10) and 1692f of the FDCPA. *See* Compl. ¶ 69.

As noted above, Section 1692d prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. In addition, Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Further, Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f.

Holmes asserts that Defendants violated Sections 1692d, 1692e, 1692e(2), 1692e(10) and 1692f of the FDCPA by virtue of their engagement in sewer service. Specifically, Holmes asserts that Defendants violated the FDCPA "by making false and misleading representations, and engaging in unfair and abusive practices" which "include, but are not limited to" the following:

---

[3] Although Defendants contend that "[e]xtending the provisions of the FDCPA to process servers . . . would have a chilling effect on process servers and grind the already slow wheels of justice to a halt, or at least a trickle," Mot. at 2, the Court doubts that such a catastrophic effect will indeed transpire. Notably, pursuant to 15 U.S.C. § 1692k, "[a] debt collector may not be held liable in any action . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Thus, while it may ultimately prove true that Sulcer merely made a mistake when serving Holmes and did not indeed engage in "sewer service," such a determination will turn on evidence that must be evaluated at a different stage of this case. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994) ("The language of Section 1692k(c) indicates that the bona fide error exception is an affirmative defense, for which [defendant] has the burden of proof at trial.").

> (1) manufacturing and selling a fraudulent Proof of Service of Summons that falsely stated that Plaintiff was personally served with a Summons and Complaint when in fact Plaintiff was not;
> (2) manufacturing and selling fraudulent, deceptive, and misleading statements and documents which are used in the collection of consumer debts;
> (3) knowingly and intentionally withholding their true name and process server registration numbers from process server returns in violation of California Business and Professions Code § 22356.5(a) with the intent to deceive, misrepresent the true nature of the services being provided, and to conceal and obscure Defendants' joint responsibility for service of process irregularities; and
> (4) aiding, abetting and ratifying the fraud, perjury, breach of official duty and other wrongful acts committed by the other Defendants in this case.

*See* Compl. ¶ 69.

Despite these contentions, Defendants submit that Holmes has failed to sufficiently allege violations of the FDCPA. In addition to the arguments already raised by Defendants as to why they believe that their actions should not constitute "abusive and harassing" conduct as prohibited by 15 U.S.C. § 1692d, *see supra* Part III.A.1.b, Defendants argue that Plaintiff's claim must fail because Defendants have presented a prima facie case of valid service, *see* Reply Supp. Mot. to Dismiss at 5. As the same factual allegations of "sewer service" discussed above form the basis for Plaintiff's allegations of FDCPA violations, the Court finds that Holmes has adequately alleged violations of the FDCPA on this basis. *See also Freeman*, 827 F. Supp. 2d at 1075-76 (finding that allegations of sewer service sufficiently stated a claim under FDCPA Sections 1692d, 1692e, and 1692f).[4] Thus, the Court now addresses Defendants' second argument regarding the presumption of valid service.

The Ninth Circuit has held that "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *SEC v. Internet Solutions for Bus., Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007). Because Defendants filed a signed Proof of Service, *see* Compl., Ex. 1, Defendants contend that Plaintiff's mere declaration that she

---

[4] Defendants also raise for the first time in their Reply in support of the Motion to Dismiss that "[n]either the FDCPA nor the RFDCPA directly regulate service of process," and "[t]he RFDCPA does not apply to Defendants." *see* Reply Supp. Mot. to Dismiss at 7-8. This Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *see also Gold v. Wolpert,* 876 F.2d 1327, 1331 n. 6 (7th Cir. 1989) ("It is well settled that new arguments cannot be made for the first time in reply. This goes for new facts too."). Thus, the Court declines to consider these arguments.

11
Case No.: 12-CV-06193-LHK
ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

1  was not served without an additional showing of evidence is insufficient to refute the presumption
2  of validity.  *See* Reply to Mot. to Dismiss at 5-6.

3  However, a Rule 12(b)(6) Motion to Dismiss challenges the legal sufficiency of the alleged
4  claims, rather than whether a plaintiff's evidence establishes a likelihood of prevailing at trial.  *See*
5  Fed. R. Civ. P. 12(b)(6); *Freeman*, 827 F. Supp. 2d at 1069 ("The question presented by a motion
6  to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled
7  to offer evidence in support of the claim.").  Moreover, courts have held that the presumption of
8  validity of a proof of service may be overcome at trial through the presentation of contradictory
9  evidence.  *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996).  As a result, the
10 Court is not persuaded that the Complaint should be dismissed for failure to present "strong and
11 convincing evidence" that overcomes the presumption of validity.

12 Because Holmes has sufficiently alleged that Defendants are "debt collectors" and that
13 Defendants have violated provisions of the FDCPA, Holmes has set forth a prima facie case for
14 violation of the FDCPA.  Therefore, the Court DENIES Defendants' Motion to Dismiss on this
15 basis.

16 **B.  The Rosenthal Act and California's Litigation Privilege**

17 Next, Defendants argue that Plaintiff's claim under the Rosenthal Act is barred by
18 California's litigation privilege, California Civil Code § 47(b).  Mot. to Dismiss at 10.  Section
19 47(b) of the California Civil Code provides in relevant part that, "[a] privileged publication or
20 broadcast is one made . . . [i]n any . . . judicial proceeding . . . ."  Cal. Civ. Code § 47(b).
21 Defendants argue that the alleged filing of a false proof of service constitutes a "privileged
22 communication" made in a judicial proceeding, and thus falls within the scope of California's
23 litigation privilege.

24 The California Supreme Court has held that the litigation privilege "applies to any
25 communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other
26 participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some
27 connection or logical relation to the action."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).
28 "The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to

courts without fear of being harassed subsequently by derivative actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 336 (2009) (quoting *Rusheen*, 37 Cal. 4th at 1063) (internal quotation marks omitted). "To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice." *Id*. Consequently, in *Rusheen v. Cohen*, the California Supreme Court denied an abuse of process claim and held that, "where the gravamen of the complaint is a privileged communication (i.e., allegedly perjured declarations of service) the privilege extends to necessarily related acts (i.e., act of levying). 37 Cal. 4th at 1062.

However, courts have recognized exceptions to the litigation privilege under statutes that: "(1) are 'more specific' than the privilege, and (2) would be 'significantly or wholly inoperable' if the privilege applied." *Komarova*, 175 Cal. App. 4th at 337 (quoting *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1246 (2009)). Until recently, California state courts had not discussed whether the litigation privilege applies to actions brought under the RFDCPA, and federal district courts were divided on the issue. *See id.* (citing each line of conflicting district court cases).

To support Defendants' assertion that the litigation privilege applies here, Defendants cite the minority line of district court cases which stand for the proposition that a claim brought under the RFDCPA is barred by California's litigation privilege. *See* Reply Supp. Mot. to Dismiss at 4-5 (citing *Lopez Reyes v. Kenosian & Miele, LLP*, 525 F. Supp. 2d 1158 (N.D. Cal. 2007), which held that the RFDCPA claim was not exempt from California's litigation privilege because the claim was based exclusively on communications made within judicial proceedings), *see also id.* (citing *Nickoloff v. Wolposs & Abramson, LLP*, 511 F. Supp. 2d 1043 (C.D. Cal. 2007), and *Taylor v. Quall*, 458 F. Supp. 2d 1065 (C.D. Cal. 2006), for the same general proposition). Defendants also rely heavily on *Rusheen v. Cohen* for the proposition that the litigation privilege applies to actions taken in collecting a judgment. *See* Mot. to Dismiss at 11. Yet, while *Rusheen* discussed the litigation privilege generally, it did not involve an RFDCPA claim. Thus, *Rusheen* is distinguishable from the instant action on that basis. *See Rusheen*, 37 Cal. 4th 1048.

However, the California Court of Appeal in *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324 (2009), clarified the issue by adopting the majority viewpoint that the litigation privilege does not bar RFDCPA claims. *Id.* at 337-338; *see also Santos v. LVNV Funding, LLC*, No. 11-02683, 2012 WL 216398, at *2-3 (N.D. Cal. Jan. 24, 2012) (citing *Komarova* to support the finding that the litigation privilege does not apply to RFDCPA claims); *see also Blackburn v. ABC Legal Servs., Inc.*, No. 11-01298, 2011 WL 8609453, at *2-3 (N.D. Cal. June 16, 2011) ("[T]he Court follows *Komarova* and holds that the litigation privilege does not apply to bar Plaintiff's claim under the Rosenthal Act."). Specifically, the *Komarova* Court held "that the [litigation] privilege cannot be used to shield violations of the [RFDCPA]" when the two statutes conflict. *Komarova*, 175 Cal. App. 4th at 337-338. In so doing, the Court of Appeal in *Komarova* reasoned that applying the privilege "would effectively vitiate the Rosenthal Act and render the protections it affords meaningless." *Id.* at 338. Therefore, the Court of Appeal "applie[d] the familiar principle of statutory construction that, in cases of irreconcilable conflict, the specific statute prevails over the general one." *Id.* (quoting *Oie v. N. Star Capital Acquisitions, L.L.C.*, 486 F. Supp. 2d 1089, 1100 (C.D. Cal. 2006)). Here, the litigation privilege similarly conflicts with the RFDCPA as applied in this action, because the privilege would completely shield Defendants from liability for the improper collection of debt.

Nevertheless, Defendants maintain that *Komarova* is not controlling in the instant action. *See* Reply Supp. Mot. to Dismiss at 5. Defendants argue that neither *Komarova* nor any "of the cases cited by Plaintiff where the court denied application of the litigation privilege to state law claims involved cases where the <u>entirety</u> of the alleged conduct took place within the context of litigation such as the filing of a false proof of service." Reply Supp. Mot. to Dismiss at 5.

Notably, "[t]he California Supreme Court has not ruled on the issue of whether the litigation privilege bars Rosenthal Act claims founded on unfair debt collection practices that occur during the course of litigation." *Huy Thanh Vo v. Nelson & Kennard*, -- F. Supp. 2d---, 2013 WL 1091207, at *14 (E.D. Cal. Mar. 15, 2013). Nevertheless, the Court finds significant that since the issuance of *Komarova* — the sole published decision by a California appellate court to address the litigation privilege in the context of the RFDCPA — not "a single federal court has found

14

Rosenthal Act claims to be barred by the litigation privilege." *Id*. at *14. In fact, district courts have generally interpreted *Komarova* as holding broadly that "[t]he California litigation privilege . . . does not apply to RFDCPA violations." *Santos*, No. 11-2683, 2012 WL 216398, at *3; *see Blackburn*, No. 11-01298, 2011 WL 8609453, at *2 ("The California Court of Appeal . . . held that the litigation privilege does not apply to bar claims under the Rosenthal Act."). The Court also finds the reasoning of *Komarova* to be persuasive in light of the fact that the RFDCPA is a remedial statute, and thus "should be interpreted broadly in order to effectuate its purpose." *Komarova*, 175 Cal. App. 4th at 340 (internal quotation marks and citations omitted); *see generally People ex rel. Lungren v. Superior Court*, 14 Cal. 4th 294, 313 (1996) ("civil statutes for the protection of the public are, generally, broadly construed in favor of that protective purpose"); *see also Welker v. Law Office of Horwitz*, 626 F. Supp. 2d 1068, 1072 (S.D. Cal. 2010) ("[T]he Court finds ample authority that the [California litigation] privilege should not be applied to claims arising under the FDCPA or California's Rosenthal Act.").

For the foregoing reasons, the Court declines to dismiss Plaintiff's RFDCPA claim as barred by the litigation privilege.[5] Accordingly, the Court DENIES Defendants' Motion to Dismiss.

### C. Motion to Strike

Next, Defendants move to strike various portions of Plaintiff's Complaint as immaterial or scandalous. First, Defendants move to strike as immaterial Holmes's allegations regarding the filing of a false proof of service because Defendants contend that the allegations are barred by the litigation privilege. Mot. to Strike, ECF No. 7, at 3. As discussed above, the Court rejects this argument. *See Komarova*, 175 Cal. App. 4th at 337-38. The Court therefore DENIES Defendants' Motion to Strike allegations that Defendants filed a false proof of service.

---

[5] In addition, it is well established that "[t]he California litigation privilege . . . does not apply to FDCPA claims." *Santos*, Case No. 11-02683, 2012 WL 216398 (citing *Welker*, 626 F. Supp. 2d at 1072). Moreover, the litigation privilege also conflicts with and would nullify the UCL. "[B]ecause Plaintiff's [UCL] claim is premised on violations of the Rosenthal Act . . . and on violations of the FDCPA, a federal claim to which California's litigation privilege is inapplicable, Plaintiff's [UCL] claim is not barred by the litigation privilege either." *Blackburn*, 2011 WL 8609453, at *2-3 (following *Komarova*).

1    Second, Defendants move to strike as scandalous and immaterial Holmes's allegations that
2    Defendants engaged in sewer service and other improper business practices. *See* Mot. to Strike at
3    5. Scandalous material has been defined as allegations that cast a "cruelly derogatory light" on a
4    party or person. *See Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d 968, 977
5    (D. Nev. 2011); *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).
6    Immaterial matter is "that which has no essential or important relationship to the claim for relief or
7    the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd*
8    *on other grounds*, 510 U.S. 517 (1994) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal
9    Practice and Procedure § 1382, at 706-07 (1990)). The Court finds that Holmes's allegations do
10   not rise to the level of casting Defendants in a "cruelly derogatory light" and are therefore not
11   "scandalous." The Court further finds that Defendants have not demonstrated that the allegations
12   of sewer service or improper business practices are entirely unrelated to the claims or that these
13   allegations prejudice Defendants. *See id.* at 1528; *see also Cal. Dep't of Toxic Substances Control*
14   *v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) ("Given their disfavored status,
15   courts often require a showing of prejudice by the moving party before granting [a motion to
16   strike].") (internal quotation marks and citation omitted); *see also Wailua Assocs. v. Aetna*
17   *Casualty and Surety Co.*, 183 F.R.D. 550, 553-54 (D. Haw. 1998) ("Matter will not be stricken
18   from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the
19   litigation; if there is any doubt as to whether under any contingency the matter may raise an issue,
20   the motion may be denied . . . .") (internal quotation marks and citation omitted). For example,
21   Holmes's allegations of improper business practices could serve to establish that EDP aided,
22   abetted, and ratified Sulcer's actions or that Defendants have forfeited the process server
23   exemption. Accordingly, the Court finds that the allegations of sewer service and improper
24   business practices are not immaterial.
25   Given that motions to strike are generally disfavored and the challenged portions of the
26   Complaint are relevant to the claims, the Court DENIES Defendants' Motion to Strike. *See Cruz*,
27   No. 12-CV-00846, 2012 WL 2838957, at *2.
28   **IV.   CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Defendants' Motion to Dismiss, and DENIES Defendants' Motion to Strike.

**IT IS SO ORDERED.**

Dated: August 15, 2013

*Lucy H. Koh*
LUCY H. KOH
United States District Judge